**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBIN FORMATO, | No. 3:19-CV-02237 |
| Plaintiff. | (Judge Brann) |
| v. | |
| MOUNT AIRY #1, LLC d/b/a MOUNT AIRY CASINO & RESORT, | |
| Defendant. | |

**MEMORANDUM OPINION**

**JULY 29, 2020**

## I.    BACKGROUND

Presently before this Court is a motion to dismiss Plaintiff Robin Formato's employment discrimination complaint (Doc. 6) filed by Defendant Mount Airy # 1, LLC d/b/a Mount Airy Casino & Resort.  Because Plaintiff has stated a claim upon which relief may be granted with regard to Count I, but has not with regard to Count II, the motion will be granted in part and denied in part.

## II.    DISCUSSION

### A.    Motion to Dismiss Standard

Under Federal Rule of Civil Procedure 12(b)(6), the Court dismisses a complaint, in whole or in part, if the plaintiff has failed to "state a claim upon which relief can be granted."  A motion to dismiss "tests the legal sufficiency of a

pleading"[1] and "streamlines litigation by dispensing with needless discovery and factfinding."[2]  "Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law."[3]  This is true of any claim, "without regard to whether it is based on an outlandish legal theory or on a close but ultimately unavailing one."[4]

> Following the Roberts Court's "civil procedure revival,"[5] the landmark decisions of *Bell Atlantic Corporation v. Twombly*[6] and *Ashcroft v. Iqbal*[7] tightened the standard that district courts must apply to 12(b)(6) motions.[8]  These cases "retired" the lenient "no-set-of-facts test" set forth in *Conley v. Gibson* and replaced it with a more exacting "plausibility" standard.[9]

Accordingly, after *Twombly* and *Iqbal*, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[10]  "A claim has facial plausibility when plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]  "Although the plausibility standard does not impose a probability requirement, it does require a

---

[1] *Richardson v. Bledsoe*, 829 F.3d 273, 289 n.13 (3d Cir. 2016) (Smith, C.J.) (*citing Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 675 (7th Cir. 2001) (Easterbrook, J.)).

[2] *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

[3] *Neitzke*, 490 U.S. at 326 (*citing Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

[4] *Neitzke,* 490 U.S. at 327.

[5] Howard M. Wasserman, THE ROBERTS COURT AND THE CIVIL PROCEDURE REVIVAL, 31 Rev. Litig. 313, 316, 319-30 (2012).

[6] 550 U.S. 544 (2007).

[7] 556 U.S. 662, 678 (2009).

[8] *Iqbal*, 556 U.S. at 670 (*citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

[9] *Id.*

[10] *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

[11] *Id.*

pleading to show more than a sheer possibility that a defendant has acted unlawfully."[12]  Moreover, "[a]sking for plausible grounds . . . calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of [wrongdoing]."[13]

The plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[14]  No matter the context, however, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'"[15]

When disposing of a motion to dismiss, the Court "accept[s] as true all factual allegations in the complaint and draw[s] all inferences from the facts alleged in the light most favorable to [the plaintiff]."[16]  However, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions."[17]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[18]

---

[12] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (Jordan, J.) (internal quotations and citations omitted).

[13] *Twombly*, 550 U.S. at 556.

[14] *Iqbal*, 556 U.S. at 679.

[15] *Iqbal*, 556 U.S. at 678 (*quoting Twombly*, 550 U.S. at 557 (internal quotations omitted)).

[16] *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008) (Nygaard, J.).

[17] *Iqbal*, 556 U.S. at 678 (internal citations omitted); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (Nygaard, J.) ("After *Iqbal*, it is clear that conclusory or 'barebones' allegations will no longer survive a motion to dismiss.").

[18] *Iqbal*, 556 U.S. at 678.

As a matter of procedure, the United States Court of Appeals for the Third

Circuit has instructed that:

> Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must tak[e] note of the elements [the] plaintiff must plead to state a claim.  Second, it should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, [w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.[19]

## B.   Facts Alleged in the Complaint

Defendant, a casino, hired Plaintiff as an on-call table games dealer on June

18, 2014.[20]  Defendant later promoted her to a full-time dealer in September

2015.[21]  Plaintiff asserts that one of her supervisors touched her inappropriately on

at least three occasions.[22]  Plaintiff complained about the conduct, but it

continued.[23]  After her complaint of inappropriate touching, Plaintiff's work was

overly scrutinized.[24]  She was told that management was watching her and waiting

for her to make a mistake so that they could terminate her employment.[25]  She met

with the Defendant's Human Resources Manager in December 2017 to discuss this

situation.[26]

---

[19] *Connelly*, 809 F.3d at 787 (internal quotations and citations omitted).
[20] Doc. 1, Compl. ¶ 9.
[21] *Id.*, at ¶ 10.
[22] *Id.*, at ¶ 13.
[23] *Id.*, at ¶ 14.
[24] *Id.*, at ¶ 7.
[25] *Id.*
[26] *Id.*

Plaintiff's mistreatment continued into 2018 in the following ways: Defendant denied her requests for time off whereas Defendant allowed time off to other employees who had not complained of harassment; she was issued a disciplinary warning ostensibly for turning her back on her table; and management intentionally disregarded her requests for assistance with rude and disrespectful customers.[27]

Based upon these allegations, Plaintiff filed the instant two-count complaint asserting causes of action for: Count I – Retaliation for engaging in protected activity in violation of Section 704(a) of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(a) and Count II – Intentional and/or negligent infliction of emotional distress.[28]

Defendant moves to dismiss the complaint on the following grounds:  1) Plaintiff's complaint is untimely regarding the retaliation claim; 2) Plaintiff has failed to establish a prima facie case of retaliation; 3) Plaintiff has failed to state a valid claim for intentional and/or negligent infliction of emotional distress.

---

[27] *Id.*, at ¶¶ 17-19.
[28] Doc. 1, Compl. ¶¶ 16–31.

## C.     Analysis

### 1.     Plaintiff's Title VII Retaliation Claim

Count I of Plaintiff's complaint asserts a cause of action for retaliation.

Defendant challenges this ground on the statute of limitations and on the prima

facie case.  We will discuss each challenge in turn.

### a.     Statute of Limitations

Plaintiff's first cause of action is asserted pursuant to Title VII of the Civil

Rights Act of 1964, which prohibits discrimination in employment based upon,

*inter alia*, sex.[29]  Before bringing a Title VII suit in federal district court, a plaintiff

must exhaust her administrative procedures by filing a charge of discrimination

with the Equal Employment Opportunity Commission (hereinafter "EEOC").[30]

The EEOC investigates the allegations of discriminatory conduct.[31] Upon

completion of the investigation, if the EEOC decides not to pursue the claim, it

notifies the complaining party that it is concluding its investigation and issues a

right to sue letter.[32]

Plaintiff must file suit within ninety (90) days of the receipt of the EEOC's

"Notice of Suit Rights" commonly referred to as a right to sue letter.[33]  The ninety-

---

[29] Doc. 1, Compl. ¶¶ 22-27.

[30] *Burgh v. Borough Council of Borough of Montrose*, 251 F.3d 465, 469 (3d Cir. 2001).

[31] *Id.* at 469-70.

[32] *Id.* at 470.

[33] 42 U.S.C. § 2000e-5(f)(1).

day period starts to run when either the party or her attorney receives the right-to-sue letter, whichever is earlier.[34]  The ninety-day period is treated as a statute of limitations.[35]  It is strictly construed and "in the absence of some equitable bases for tolling, a civil suit filed even one day late is time-barred and may be dismissed."[36]

"The statute of limitations is an affirmative defense, and the burden of establishing its applicability to a particular claim rests with the defendant."[37]  Third Circuit guidance provides that a statute of limitations defense may be raised in a 12(b)(6) motion, "but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'"[38]

To meet its burden of establishing that the statute of limitations bars the instant case, the Defendant has submitted several exhibits.  Preliminarily, the Court must decide whether it properly can consider these exhibits.  Generally, a district court may not consider matters extraneous to pleadings when ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6).  The Court may, however, consider documents integral to or explicitly relied upon in a complaint

---

[34] *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 92–93 (1990).

[35] *Burgh*, 251 F.3d at 470.

[36] *Id.*

[37] *Van Buskirk v. Carey Canadian Mines, LTD*, 760 F.2d 481, 487 (3d Cir. 1988).

[38] *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.*, 514 F.2d 1092, 1094 (3d Cir. 1975)) (footnote omitted).

without converting the motion to dismiss into a motion for summary judgment.[39]

Here, one exhibit that the Defendant submits is the Plaintiff's right to sue letter.

Although Plaintiff did not attach it to the Complaint, it is integral to and explicitly

referred to by Plaintiff in the Complaint.[40]   Therefore, it is proper for the Court to

consider the right to sue letter in determining Defendant's Motion to Dismiss.[41]

The second document is an email sent from the EEOC to Plaintiff's counsel

dated September 24, 2019.[42]   As this document also may affect the statute of

limitations, we find that it is appropriate for the Court to consider it.[43]   The

Plaintiff does not challenge the appropriateness of the Court relying on these

documents.

In the instant case, Plaintiff alleges that the statute of limitations began to

run when she received her "Notice of Suit Rights" on October 7, 2019.[44]   She filed

the instant complaint eighty-five (85) days later on December 31, 2019.   Thus, the

ninety-day statute of limitations has been met.   Defendant proposes two alternate

dates for the start of the statute of limitations.   The first is September 24, 2019, the

---

[39] *West Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 (3d Cir. 2010); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

[40] Doc. 1, Compl. ¶ 7.

[41] *See Zilinskas v. UPMC*, Civil Action No. 13–82, 2013 WL 2372173 at *3 (W.D. Pa. May 21, 2013) (finding it proper to review the right to sue letter although it was not attached to the complaint because it was integral to the claim and mentioned in the complaint).

[42] Doc. 6-1, Def.'s Exh. B, at 5.

[43] While the propriety of examining this email exhibit may be a closer call, we note that the Plaintiff does not object to the Court reviewing it, and no prejudice will accrue to the Plaintiff as the Court finds Defendant's underlying argument unavailing.

[44] Doc. 1, Compl. ¶ 7.

date of the email sent to Plaintiff's counsel from the EEOC.  The second date is September 27, 2019, which is three days after the EEOC mailed the right to sue letter to Plaintiff and her counsel.

First, Defendant argues that the email received by Plaintiff's counsel from the EEOC and dated September 24, 2019 commenced the running of the statute of limitations.[45]  The email indicates that the EEOC was closing the charge filed by Plaintiff and that the EEOC would issue Plaintiff a "Dismissal and Notice of Rights" letter.[46]  This email is thus not a formal notice from the EEOC.  The law provides that informal, even verbal, notice to plaintiff's counsel can start the ninety-day filing period.[47]  To start the statute of limitations the substance of the communication must be substantially equivalent to the information contained in a right to sue letter.[48]  According to the Defendant, this email notice to Plaintiff's counsel was in writing and in a form substantially similar to a right to sue letter; therefore, it served to start the running of the statute of limitations; the Plaintiff disagrees. The Court agrees with the Plaintiff.

For informal notice to counsel to be the equivalent of written notice, "there must be proof that [the plaintiff] knew when the 90-day statute of limitations

---

[45] Doc. 6-1, Def.'s Exh. B, at 5.
[46] *Id.*
[47] *Ebbert v. DaimlerChrysler Corp.*, 319 F.3d 103, 115-16 (3d Cir. 2003).
[48] *Id.*

would start as a result" of the informal notice.[49]  The email here does not meet this requirement because it states that Plaintiff will be sent a "Dismissal and Notice of Rights" and that the 90-day period will commence when she receives it.[50]  Thus, while informal notice may at times provide sufficient notice to start the running of the 90-day period, here, it does not.

Next, Defendant argues that the statute of limitations commenced running on September 27, 2018.  In support of this assertion, Defendant provides a copy of the notice sent to the Plaintiff and her counsel.[51]  The notice indicates that it was mailed to Plaintiff and to her counsel on September 24, 2019.[52]  Plaintiff's complaint indicates that she did not receive the notice until thirteen (13) days later on October 7, 2019.[53]  Defendant argues that regardless of when Plaintiff received the notice, it should be deemed that her counsel received it three days after the EEOC mailed it - September 27, 2019.  Defendant contends that the statute of limitations commenced on September 27, 2019, and that the complaint is untimely having been filed ninety-five (95) days later.

The law provides that "in the absence of other evidence, courts will presume that a plaintiff received her right-to-sue letter three days after the EEOC mailed

---

[49] *Id.* at 116.
[50] Doc. 6-1, Def.'s Exh. B, at 5.
[51] Doc. 6-1, Def.'s Exh. A, at 2-3.
[52] *Id.*, at 2.
[53] Doc. 1, Compl. ¶ 7.

it."[54]  "There is a presumption that a right-to-sue letter properly mailed is not only received by the addressee, but also is received in the due course of the mails."[55] Defendant urges the Court to apply this presumption here and find that Plaintiff's attorney should be presumed to have received the notice on September 27, 2019. The law also provides that the statute of limitations is governed by whoever receives the notice earliest, the plaintiff or her counsel.[56]  The earlier date controls, and to be timely, Plaintiff's Complaint had to be filed by Thursday, December 26, 2019.[57]  The complaint was not filed until December 31, 2019, several days beyond the statutory period.

In support of its position, Defendant cites to *DeFrancesco v. Weir Hazelton, Inc.*, 232 F.R.D. 454, 457-60 (E.D. Pa. 2005) and the cases collected therein.  A review of *DeFrancesco* and the cases it collects does not explicitly support the Defendant's position.

In total *DeFrancesco* collects seven cases.  Five of the cases fail to support Defendant's position in that they deal with *pro se* plaintiffs and notice to their attorneys is therefore not an issue.[58]  The two cases which did not involve *pro se*

---

[54] *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999); *Dempsey-Lowden v. Levittown-Fairless Hills Rescue Squad, Inc.*, No. 16-6112, 2018 WL 398296 (E.D. Pa. Jan. 11, 2018) (holding same).

[55] *Loftin v. N.Y.S. Dep't of Mental Health*, No. 02-4532, 2003 WL 221767, at *1 (S.D.N.Y. Jan. 31, 2003) (citing *Battaglia v. Heckler*, 643 F. Supp. 558, 559-60 (S.D.N.Y. 1986)).

[56] *Irwin*, 498 U.S. at 92–93.

[57] *Id.* at 93.

[58] *See Barrett v. Rumsfeld*, 158 F. App'x 89, 92  (10th Cir. 2005) (applying the presumption to a *pro se* plaintiff where plaintiff presented no contrary evidence); *Black v. U.S. Postal Serv.*,

11

plaintiffs also fail to support Defendant's position.  In *Miller v. Bristol Compressors, Inc.*,  the parties disputed the date of receipt of the letter, and the court explained "when the date of receipt of the EEOC right-to-sue letter is unknown or in dispute, the court may apply the three-day presumption derived from FED. R. CIV. P. 6(e) to find that the letter was received three days after mailing."[59]  In  *Ashworth v. Carillon Assisted Living of Asheboro*, which was at the summary judgment stage, the plaintiff stated in her deposition that she did not know when she received it, thus the three-day rule applied.[60]  The court explained that "[i]n the absence of evidence of the date on which the right-to-sue letter was

---

No. 04–2393, 2005 WL 1388629, at *3 n.1, 2005 U.S. Dist. LEXIS 11287, at *8 n.1 (E.D. Pa. June 7, 2005) (applying a five-day presumption at the summary judgment stage to a *pro se* plaintiff and noting that the three-day presumption would also be applicable but unhelpful to the plaintiff); *Williams v. St. Joseph's Hosp.*, No. 02–6467, 2003 WL 23350424, at *4, 2003 U.S. Dist. LEXIS 25033, at *12 (W.D.N.Y. Oct. 14, 2003) (applying the presumption to a *pro se* plaintiff who filed the complaint past the 90 day period after the court rejected her reasons for the late filing); *Dupree v. United Food & Commercial Workers Union*, No. 03–930, 2005 WL 41562, at *2, 2005 U.S. Dist. LEXIS 167, at *4–5 (D.Del. Jan. 7, 2005) (At summary judgment the court rejected *pro se* plaintiff's bare assertion that he received the right to sue letter nearly a month after it was mailed  noting, "When the receipt date of the right to sue letter is in dispute, and there is no evidence pertaining to when the letter was actually received, Rule 6(e) of the Federal Rules of Civil Procedure will control by invoking the presumption of receipt within three days of mailing."); *Allen v. AMTRAK*, No. 03–3497, 2004 WL 2830629, at *3, 2004 U.S. Dist. LEXIS 24846, at *8–9 (E.D. Pa. Dec. 7, 2004) (At summary judgment the court explained that "[i]n accordance with Federal Rule of Civil Procedure 6(e), absent evidence of the exact date of the receipt of the notice, it is presumed that the date of receipt of an EEOC right-to-sue letter is three days after its mailing."); *Ashworth v. Carillon Assisted Living of Asheboro*, LLC, No. 02–749, 2004 WL 1118583, at *2, 2004 U.S. Dist. LEXIS 8968, at *4 (D.N.C. May 17, 2004) (summary judgment, plaintiff stated in deposition that she did not know when she received the right to sue letter, thus the three-day rule applied).

[59] *Miller v. Bristol Compressors, Inc.*, No. 05–83, 2005 WL 3263053, at *2, 2005 U.S. Dist. LEXIS 30599, at *5 (W.D. Va. Dec. 2, 2005).

[60] *Ashworth v. Carillon Assisted Living of Asheboro*, LLC, No. 02–749, 2004 WL 1118583, at *2, 2004 U.S. Dist. LEXIS 8968, at *4 (D.N.C. May 17, 2004).

received, the Court will follow Federal Rule of Civil Procedure 6(e) and presume that the letter arrived three days after it was mailed."[61]

As noted above, the Defendant bears the burden of establishing a violation of the statute of limitations.  Here, at best, Defendant has established that it is unknown when Plaintiff's counsel received the right to sue letter.  Defendant has provided no authority, and our research has uncovered none, that the Plaintiff bears the burden at the motion to dismiss stage to indicate when her attorney received notice of the right to sue letter.  The face of the complaint indicates that the operative date is when Plaintiff received the notice, and she filed suit within the statute of limitations.[62]  It appears from the cases discussed above that the Defendant must present some evidence, establish a lack of evidence, or establish that a dispute exists to apply the three-day presumption to Plaintiff's attorney and prove its statute of limitations defense.  In this case, however, no factual development has occurred nor has a dispute arisen as to when Plaintiff's counsel received the notice.  The record is silent as to when or if Plaintiff's counsel received the letter.

To complicate matters further, it appears that Plaintiff may have changed counsel at some point between filing the EEOC charge and filing the instant complaint, and it is not clear whether equitable tolling of the statute of limitations

---

[61] *Id.*
[62] Doc. 1, Compl. ¶ 7.

might be applicable.  Accordingly, this portion of the motion to dismiss will be denied, without prejudice.  If discovery demonstrates when counsel received the notice or if the date is unknown the Defendant may raise the issue of the presumption again.

### b.    Title VII – Prima Facie case

Next, Defendant argues that the Plaintiff has failed to sufficiently allege a prima facie case of Title VII retaliation, and therefore, the case should be dismissed.  After a careful review, I disagree.

A plaintiff with a Title VII retaliation claim must allege a prima facie case, which includes the following elements: 1) she engaged in a protected activity; 2) her employer took adverse action against her either after or contemporaneously with the protected activity; and 3) a causal connection exists between the protected activity and the adverse action.[63]  Here, Defendant argues that Plaintiff has not alleged any of the elements of a prima facie case.  We will discuss them in turn.

### 1.    Protected Activity

The first element of a prima facie case is that the employee engaged in a protected activity.[64]  The law provides:

> With respect to "protected activity," the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the "participation clause") and those who oppose discrimination made unlawful by Title VII (the "opposition clause").

---

[63] *Daniels v. Sch. Dist. of Phila.*, 776 F.3d 181, 193 (3d Cir. 2015).
[64] *Id.*

*Slagle v. County of Clarion*, 435 F.3d 262, 266 (3d Cir. 2006). Whether the employee opposes, or participates in a proceeding against, the employer's activity, the employee must hold an objectively reasonable belief, in good faith, that the activity they oppose is unlawful under Title VII. *Clark County v. Breeden*, 532 U.S. 268, 271, 121 S.Ct. 1508, 149 L.Ed.2d 509 (2001) (per curiam) (rejecting retaliation claim where "[n]o reasonable person could have believed that" the underlying incident complained about "violated Title VII's standard" for unlawful discrimination); *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1085 (3d Cir. 1996) (retaliation plaintiff must "act[ ] under a good faith, reasonable belief that a violation existed"). Moreover, the employee's "opposition" to unlawful discrimination must not be equivocal. *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995).[65]

Plaintiff's Complaint alleges that one of her supervisors inappropriately touched her and that she complained about this unwanted touching.[66] The complaint is not entirely clear, but it appears that she complained internally regarding the unwanted touching.[67] More detail is provided in her charge of discrimination filed with the EEOC.[68] It indicates that she complained to her employer in the summer of 2017 of the unwanted touching and that an investigation occurred. The investigation "ruled in [plaintiff's] favor" and her supervisor was suspended.[69] The supervisor found different employment in February 2018 and resigned.[70] Specifically, with regard to retaliation, Plaintiff

---

[65] *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006).

[66] Doc. 1, Compl. ¶¶ 13-14.

[67] *Id.*, at ¶ 22.

[68] Doc. 10-1. This charge of discrimination relates to the retaliation, not to the initial sexual harassment.

[69] *Id.*

[70] *Id*

claims that she "engaged in protected activity when she complained about discrimination and harassment based on her gender."[71]  Defendant does not challenge that Plaintiff's complaint of sexual harassment is a protected activity.[72]  Accordingly, Plaintiff has met the first element of a prima facie case.

In addition to complaining about sexual harassment, Plaintiff complained about increased scrutiny of her work, and other work-related matters.  Defendant challenges that this second complaint Plaintiff made about work performance issues was not protected conduct as it does not relate to Plaintiff's sex.  The Court does not need to decide this issue, as Plaintiff has clearly alleged a protected activity when she made complaints of sexual harassment in the summer of 2017.

## 2.    Adverse Employment Action

The second element of a prima face case of retaliation is adverse employment action.[73]  Plaintiff's complaint alleges the following adverse employment actions:  denial of requests for vacation days; unreasonable scrutiny of her work; denial of assistance in dealing with unruly customers; and issuance of improper disciplinary warning.[74]  Defendant discusses each of these actions separately and provides authority for the position that they are not individually sufficient to establish an adverse employment action.  The Third Circuit Court of

---

[71]  Doc. 1, Compl. ¶ 17.
[72]  Doc. 10, Def. Supp. Br. at 12.
[73]  *Daniels*, 776 F.3d at 193.
[74]  Doc. 1, Compl. ¶¶ 17-19.

Appeals, however, has "indicated that 'a discrimination analysis must concentrate not on individual incidents, but on the overall scenario[.]'"[75]

The law provides that to establish an adverse employment action "a plaintiff claiming retaliation under Title VII must show that a reasonable employee would have found the alleged retaliatory actions "materially adverse" in that they "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination."[76] Here, considering the early stage of this proceeding without any discovery having been undertaken, it appears that the facts alleged by the Plaintiff when viewed cumulatively may have been such that they would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

### 3.    Causation

The final element of the prima facie case of retaliation is causation, that is that the plaintiff's protected activity caused the adverse employment action.[77] The law provides that causation may be established "when only a short period of time separates the aggrieved employee's protected conduct and an adverse employment decision."[78] If, however, the temporal proximity between the protected conduct

---

[75] *Shaner v. Synthes*, 204 F.3d 494, 503 n.9 (3d Cir. 2000); *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1484 (3d Cir. 1990) ("A play cannot be understood on the basis of some of its scenes but only on its entire performance, and similarly, a discrimination analysis must concentrate not on individual incidents, but on the overall scenario.").

[76] *Moore*, 461 F.3d at 341 (internal citation and quotation marks omitted).

[77] *Daniels*, 776 F.3d at 193.

[78] *Fasold v. Justice*, 409 F.3d 178, 189-90 (3d Cir. 2005).

and the adverse decision is not unusually suggestive, the issue becomes whether "the proffered evidence, looked at as a whole, may suffice to raise the inference."[79] A pattern of antagonism coupled with timing may establish such a causal link.[80] "Whether a causal link exists must be considered with a careful eye to the specific facts and circumstances encountered."[81]   Thus, in determining whether a causal nexus exists, the Court engages in a totality of the circumstances inquiry.   Here, Plaintiff has failed to set forth a specific timeline of events, making it difficult to determine whether temporal proximity indicates causality.

Bearing in mind that this is a motion to dismiss, and not a motion for summary judgment, the Court finds that a causal connection has been sufficiently pleaded by the Plaintiff.   She filed her charge of discrimination against her supervisor in the summer of 2017; it is unclear when the investigation was completed, but apparently sometime before December 2017, when the series of actions by the employer, which Plaintiff alleges are the adverse employment actions, began.   The actions continued at least into the spring and summer of 2018.[82]   Here, a temporal link is weak, or at least difficult to ascertain at this time.

---

[79] *Lichtenstein v. Univ. of Pittsburgh Med. Ctr*, 691 F.3d 294, 307 (3d Cir. 2012).

[80] *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007).

[81] *Budhun v. Reading Hosp. and Med. Ctr.*, 765 F.3d 245, 258 (3d Cir. 2014) (internal quotation marks and citation omitted).

[82] Doc. 1, Compl. ¶¶ 7-10.

A causal link may be found in the absence of temporal proximity where there exists a strong intervening pattern of antagonism.[83]  It can be inferred from the complaint's allegations that Plaintiff's employment proceeded smoothly for several years from her hiring in 2014 through her promotion in 2015 to full-time dealer up until she complained about the sexual harassment which led to her supervisor's suspension and eventual separation from Defendant's employ.  After her complaints, her employer started to find ways to terminate her.  Although, the timing of all events is not clear, for purposes of a motion to dismiss, I find that Plaintiff has sufficiently pleaded causation through the pattern of antagonism which began after she complained of inappropriate touching.  Accordingly, proper allegations of causation have been made, and Defendant's motion to dismiss on this point will be denied.

### c.    Intentional and Negligent Infliction of Emotional Distress

The second count of Plaintiff's complaint alleges the Pennsylvania state law tort claim of "Intentional and/or Negligent Infliction of Emotional Distress."[84] Defendant moves to dismiss this claim as it is precluded by the Pennsylvania Worker's Compensation law.  I agree.  The count will be dismissed.

---

[83] *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000).
[84] Doc. 1, Compl. ¶¶ 28-31.

Under Pennsylvania law, the workers' compensation statute provides the exclusive remedy for harm sustained during the course of employment.[85] This exclusivity provision bars claims for intentional and/or negligent infliction of emotional distress arising out of employment.[86]

The law provides, for certain exceptions to the preclusive effect of the Pennsylvania Worker's Compensation statute.  One such exception involves allegations of sexual harassment.[87]  Plaintiff argues that her claim falls within this exception and is thus not precluded by the Worker's Compensation statute. Plaintiff's argument is not convincing.

The Complaint does not assert emotional distress claims based upon sexual harassment.  Rather, the Complaint's emotional distress claim is based upon the retaliation that Plaintiff suffered due to making complaints.  Specifically, the complaint alleges: "Defendant's **retaliation** against Plaintiff was intentional and purposeful in order to cause Plaintiff emotional distress and injury, and/or acted in reckless disregard for a high degree of probability that emotional distress would follow from Defendant's conduct."[88]  Plaintiff cannot assert the sexual harassment

---

[85] *Matczak v. Frankford*, 136 F.3d 933, 940 (3d Cir. 1997) *abrogated on other grounds by Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999).

[86] *Id.*

[87] *See, e.g. EEOC v. Fed. Express Corp.*, 537 F. Supp. 2d 700, 714 (M.D. Pa. 2005) (finding that "Pennsylvania courts and courts within this district have interpreted these provisions as excluding IIED claims arising from sexual harassment in the workplace from the preclusive effect of the PWCA.").

[88] Doc. 1, Compl. ¶ 29 (emphasis added).

exception to the worker's compensation preclusive effect where she has not alleged

that it was the sexual harassment itself which caused her emotional distress, but

rather, Defendant's retaliation.  Accordingly, Count II of Plaintiff's Complaint will

be dismissed as the claim is precluded by the Pennsylvania Worker's

Compensation law.

Moreover, even if the exclusion applied, Plaintiff would have to establish

that Defendant's retaliatory actions were:

> of an "extreme or outrageous type." *Cox* [*v. Keystone Carbon Co.*],
> 861 F.2d [390,] 395 [(3d Cir. 1988)] (quoting *Rinehimer v. Luzerne
> County Community College*, 372 Pa. Super. 480, 539 A.2d 1298, 1305
> (1988). We have noted that "it is extremely rare to find conduct in the
> employment context that will rise to the level of outrageousness
> necessary to provide a basis for recovery for the tort of intentional
> infliction of emotional distress." *Id.* (citation omitted). [Plaintiff]
> [Plaintiff] has alleged conduct which, while possibly discriminatory,
> could not be considered "extreme or outrageous."[89]

Plaintiff's allegations are all work-related employment context actions–

denial of vacation time, disregarding requests for assistance with unruly customers

and being issued a disciplinary warning.  These actions may indeed be

discriminatory, but they cannot be deemed extreme and outrageous.[90]

Accordingly, the motion to dismiss Count II of Plaintiff's complaint will be

granted.

---

[89] *Matczak v. Frankford*, 136 F.3d at 940.
[90] *Id.*

Although the emotional distress count will be dismissed, Plaintiff may still recover damages for the emotional distress she suffered due to the retaliation pursuant to Title VII.[91]  Title VII allows for damages for "emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses."[92]

## III.    CONCLUSION

Defendant's Motion to Dismiss pursuant to Rule 12(b)(6) is granted with respect to Count II, Intentional and/or Negligent Infliction of Emotional Distress, and denied in all other respects.  An appropriate Order follows.

BY THE COURT:


*s/ Matthew W. Brann*
Matthew W. Brann
United States District Judge

---

[91] *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 161 (3d Cir. 1999).
[92] *Id.*  (quoting 42 U.S.C. § 1981a(b)(3)).